IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| L.E.,<br><br>                    Plaintiff,<br><br>v.<br><br>DESERET MUTUAL BENEFIT<br>ADMINISTRATORS,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:20-cv-00707-RJS-DBP<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

This case arises under the Employee Retirement Income Security Act of 1974 (ERISA). Plaintiff L.E. alleges Defendant Deseret Mutual Benefit Administrators (DMBA) violated ERISA by denying coverage for her outpatient psychotherapy sessions.  Now before the court are the parties' cross-Motions for Summary Judgment and L.E.'s Motion to Supplement the Administrative Record.[1]  For the reasons stated below, DMBA's Motion for Summary Judgment is GRANTED in part and DENIED in part, L.E.'s Motion to Supplement the Administrative Record is DENIED, and L.E.'s Motion for Summary Judgment is DENIED in part and REMANDED in part.

## BACKGROUND AND PROCEDURAL HISTORY

L.E. was a participant in the Deseret Premier Plan (under the Deseret Healthcare Employee Welfare Benefits Plan) when she received psychotherapy from a licensed clinical psychologist, Dr. Katie Burton (also known as Dr. Kate Yoder), for post-traumatic stress disorder and dissociative identity disorder.[2]  In January 2020, the Plan Administrator, DMBA,

---

[1] Dkt. 36, *L.E.'s Motion for Summary Judgment*; Dkt. 35, *DMBA's Motion for Summary Judgment*; Dkt. 55, *L.E.'s Motion and Memorandum to Supplement the Joint Administrative Record*.

[2] *See* Dkt. 36 at 6–7; *see also* Dkt. 32, *Administrative Record (AR)* [SEALED] at 16.

started denying coverage for some of L.E.'s outpatient psychotherapy sessions, leading her to accrue out-of-pocket costs she argues should have been covered by the Plan.[3]

The Plan fully covers mental health outpatient evaluation, therapy, and medication management after the patient's copayment,[4] with some notable exceptions.  For example, the Plan excludes coverage for certain "[m]ental or emotional conditions without manifest psychiatric disorder . . . or non-specific conditions," and "[c]ounseling."[5]  In denying coverage for L.E.'s psychotherapy sessions, however, DMBA did not reference specific provisions of the Plan or otherwise explain the reason for the denial beyond cursory statements of non-coverage.[6] During the relevant period, L.E. avers $64,405.10 was covered by the Plan, while she was left with out-of-pocket charges of $33,749.90.[7]  And she "continues to receive treatment which [she contends] should be covered by the Plan."[8]

The Plan and the summary plan description (together, the Plan Documents)[9] outline the process for appealing DMBA's denial of benefits.  Notably, the Plan Documents require

---

[3] *See* Dkt. 36 at 11, 19–23.

[4] *Id.* at 9 (citing *AR* at 226).

[5] *Id.* at 9–10 (citing *AR* at 226, 243, 1147, 1198).

[6] Most of the denials stated: "THE ABOVE SERVICE IS NOT COVERED.  Expenses which do not meet the definition of eligible charges are denied."  *See AR* at 6, 7, 11, 30, 31, 35, 36, 111, 115.  Other denials provided: "THESE SERVICES ARE NOT COVERED BY THE PLAN."  *See id.* at 1, 2, 12, 13, 18, 29.

[7] Dkt. 30, *Second Amended Complaint* ¶¶ 25–27.

[8] *Id.* ¶ 28.

[9] *See AR* at 200–15 (Summary Plan Description: General Information), 216–45 (Summary Plan Description: Deseret Premier Plan), 246–57 (Definitions), 258–73 (General Information), 1142–67 (Plan).

participants to "exhaust[] all administrative remedies" before filing a civil action.[10]  In the context of both pre- and post-service claims, the Plan contemplates two levels of appeal: (1) an initial review of the denial with DMBA's Claims Management Review team; and (2) a second appeal with the Claims Review Committee.[11]  The Plan Documents clarify that either the participant or a "duly authorized representative" of the participant may file an appeal under the Plan.[12]  However, the appeal must be submitted "in writing within [twelve] months from the date" of the adverse benefit decision.[13]

On May 8, 2020, DMBA received a seven-page letter from L.E.'s counsel, Marcie E. Schaap, seeking an initial review of the denials for L.E.'s psychotherapy sessions.[14]  In the letter, counsel argued that DMBA's "reduction in benefits [was] unjustified and create[d] an unfair financial burden for [L.E.]"[15]  She requested, among other things, further explanations from DMBA regarding the denial of benefits and the specific criteria used to assess L.E.'s claims.[16]

DMBA responded to the letter a week later, on May 19, 2020, noticing the "request for a first-level review of benefits for services," while also alerting L.E.'s counsel that she did not

---

[10] *See* Dkt. 35 at 6 (citing *AR* at 211); *see also AR* at 1243 ("The claims procedures set forth in Section 5.2 must be exhausted prior to any Participant, any Spouse, any other Dependent or any other person bringing an action under this Plan.").  L.E. contends this is a "legal conclusion," as opposed to a statement of undisputed material fact, and points out that "ERISA does not contain an exhaustion requirement and the court's application of the exhaustion requirement is subject to the court's discretion and contains several exceptions."  Dkt. 37, *L.E.'s Opposition to DMBA's Motion for Summary Judgment* at 3 (citing *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 11263 (10th Cir. 1998)).  For background purposes, the court agrees with DMBA that the Plan Documents require an exhaustion of administrative remedies.

[11] *See* Dkt. 35 at 6 (citing *AR* at 213, 274, 1235–36); Dkt. 37 at 3.

[12] *See AR* at 1232, *see also id.* at 213, 271, 274.

[13] *Id.* at 212, 245, 270.

[14] Dkt. 35 at 6–7 (citing *AR* at 466–72); *see also AR* at 19–25.

[15] *AR* at 20, 467.

[16] *Id.* at 20, 23–24, 467, 470–71.

"meet the plan criteria for an authorized representative to act on the patient's behalf."[17]  To satisfy the plan criteria, DMBA stated that L.E. would need to do the following:

- Provide a written statement approving the authorized representative to act on the patient's behalf.
- The written statement must include the specific service dates (if post-service), description of treatment or service, and claim or preauthorization numbers for which the representative is authorized to act.
- The written statement must include the patient's signature in support of the authorization, witnessed by a notary public, dated on or after the date of the initial adverse benefit determination.[18]

DMBA explained that its decision was "unrelated to any [Health Insurance Portability and Accountability Act (HIPAA)] authorizations previously granted."[19]  DMBA further cautioned that it would "direct all information and notification about that claim to the personal representative authorized to act on the patient's behalf" only after these procedures were followed.[20]  Finally, DMBA stated that counsel or L.E. could find the "provision(s) to authorize a personal representative" in the summary plan description under "Claims Review and Appeal Procedures."[21]

On May 27, 2020, L.E. responded by providing DMBA with a signed form on DMBA letterhead entitled "Authorization to Use and/or Disclose Protected Health Information (PHI)."[22]  The form authorized DMBA to "use and disclose [L.E.'s] PHI" to her counsel, including

---

[17] *See* Dkt. 35 at 6–7 (citing *AR* at 27–28).

[18] *AR* at 27.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 28.  The relevant parts of the summary plan description explain that the participant, or "someone [they] name to act for [them] as [their] authorized representative, may file an appeal."  The summary plan description then directs participants to "[c]ontact DMBA's appeals coordinator . . . for information about how to authorize another person to represent [them]."  *Id.* at 213, 271; *see also id.* at 46, 274 (reflecting the same guidance on DMBA's standard appeal form and "Understanding Your Explanation of Benefits" document, respectively).

[22] *See* Dkt. 37 at 5 (citing *AR* at 33); Dkt. 36 at 12 (same).

"information about [her] past, present, or future physical or mental health."[23]  At some point

after the submission, a photocopy of the PHI form was marked up with hand-written comments

stating DMBA "require[d] a 'birthdate' [for the authorized representative]"—Marcie E. Schaap,

Attorney at Law, P.C.[24]  If Schaap did not "want to give her actual birthdate," it was speculated

that "maybe [L.E.] could decide on a date she could use."[25]

    The events that followed the submission of the PHI form are disputed.  L.E. contends two

additional documents were submitted to DMBA through the DMBA online portal "[o]n or about

June 17, 2020": an updated PHI form (which added an Employer Identification Number for

Schaap's law firm) and a notarized power of attorney form.[26]  But she avers these documents

were unintentionally omitted from the administrative record.[27]  L.E. explains that "initial briefing

was delegated to an associate who is no longer with [Schaap's] law firm, and both he and []

Schaap failed to communicate fully with [her] to gather all the relevant facts about her

communications with DMBA."[28]

    In any event, it is generally agreed that L.E. did not follow the exact procedures set forth

by DMBA's May 19, 2020 letter, and that several months passed without any review of L.E.'s

substantive claim.[29]  Then, on September 1, 2020, L.E. filed suit against DMBA in Utah State

---

[23] *AR* at 33.

[24] *Id.*

[25] *Id.*

[26] *See* Dkt. 55 at 3.

[27] *Id.* at 5.

[28] *Id.* at 1–2.

[29] *See* Dkt. 35 at 7 ("At no time after sending the May 19 Letter did [L.E.] take the required steps to designate []
Schaap as her authorized representative . . . [or] submit a written request for review of the denied claims . . . ."); Dkt.
36 at 11–12 (reflecting L.E.'s position that DMBA's May 19, 2020 letter contained unnecessary requirements and
that she "completed, signed, and submitted DMBA's authorization form designating . . . [Schaap] as her authorized
representative," but that DMBA "made no further response to [L.E.'s] appeal.").

Court, asserting claims for breach of contract, unjust enrichment, and breach of the covenant of good faith and fair dealing.[30]  DMBA promptly removed the case to federal court based on ERISA preemption of L.E.'s state law claims.[31]

After removal to federal court, L.E. eventually amended her Complaint to state two federal claims under ERISA—recovery of plan benefits under 29 U.S.C. § 1132(a)(1)(B) and breach of fiduciary duties under §§ 1104, 1109, and 1132(a)(2)–(3)—as well as a pendant state claim for breach of the covenant of good faith and fair dealing.[32]  The parties finalized the administrative record on September 28, 2021,[33] and then filed their cross-Motions for Summary Judgment on September 6, 2022.[34]  After the cross-Motions were fully briefed and the matter set for oral argument, L.E. filed her Motion to Supplement the Administrative Record, contending the parties failed to add a number of "highly relevant" documents to the administrative record regarding her attempts to properly designate counsel as her authorized representative.[35]  L.E.'s latest Motion and corresponding Declaration describe further communications with DMBA and her growing frustration with DMBA's procedural hurdles for designating an authorized representative.[36]  Upon full consideration of the parties' briefing, oral argument concerning the cross-Motions was heard on June 13, 2023, and the matter taken under advisement.[37]

---

[30] Dkt. 2-1, *Exhibit A to Notice of Removal: State Court Filings*.

[31] Dkt. 2, *Notice of Removal* at 2.

[32] Dkt. 30 ¶¶ 29–60.

[33] *See* Dkt. 32.

[34] Dkt. 35; Dkt. 36.

[35] *See* Dkt. 55 at 3; *see also* Dkt. 58 [SEALED].

[36] *See* Dkt. 55 at 3–4; *see generally* Dkt. 58.

[37] Dkt. 60, *Minute Order for Proceedings Held on June 13, 2023*.

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law."[38]  On a motion for summary judgment, the evidence and reasonable inferences are generally viewed in a light favorable to the nonmoving party.[39]  However, because this is an ERISA case where both parties moved for summary judgment, "the factual determination of eligibility of benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."[40]  In reviewing cross-motions for summary judgment, the court must evaluate each motion separately—"the denial of one does not require the grant of another."[41]

**ANALYSIS**

L.E. moves for summary judgment on her recovery of benefits claim,[42] while DMBA moves for summary judgment on all of L.E.'s claims and requests an entry of judgment dismissing this action as a matter of law.[43]  Because L.E.'s Motion to Supplement the Administrative Record has some bearing on the facts discussed for the purpose of the parties' cross-Motions, the court starts there.  The court then addresses the parties' dispute over whether L.E. properly exhausted her administrative remedies, or if any failure to do so was excused by other factors.  Next, the court discusses DMBA's contention that L.E.'s claim for breach of good faith and fair dealing is preempted by ERISA.  Finally, the court ascertains the appropriate

---

[38] Fed. R. Civ. P. 56(a).

[39] *See N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

[40] *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (citation omitted).

[41] *Bluell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 434 (10th Cir. 1979).

[42] *See* Dkt. 36 at 1.

[43] *See* Dkt. 35 at 1.

remedies—opting to remand the case for a full and fair review by DMBA and deny L.E.'s requests for prejudgment interest and attorneys' fees.

## I.    L.E.'s Motion to Supplement the Administrative Record

As prefaced above, L.E. seeks to supplement the administrative record with a number of documents and communications that were purportedly omitted from the parties' Joint Administrative Record.[44]  "Whether [the omission was caused] by the Plaintiff or the Defendant," L.E. asserts "it is not relevant here."[45]  But she argues the documents are "highly relevant to the issue of whether or not [she] appointed the law firm that represented her as her personal representative,"[46] and therefore "should be included in the Joint Administrative Record."[47]  DMBA opposes L.E.'s extra-record evidence on the basis that her request is untimely, prejudicial to DMBA, and procedurally improper.[48]

Generally, the court's review of ERISA claims is "limited to the administrative record—the materials compiled by the administrator in the course of . . . [its] decision[making]."[49]  The Tenth Circuit cautions that "it is the unusual case in which the district court should allow supplementation of the record,"[50] and therefore "[a] party seeking to introduce evidence from outside the administrative record bears a significant burden in establishing that he may do so."[51]  The court has discretion to admit extra-record evidence if the proponent can show the evidence:

---

[44] Dkt. 55 at 3.

[45] *Id.* at 5.

[46] *Id.*

[47] *Id.* at 7.

[48] *See* Dkt. 59, *DMBA's Opposition to L.E.'s Motion to Supplement the Administrative Record* at 4–8.

[49] *Foster v. PPG Indus.*, 693 F.3d 1226, 1231 (10th Cir. 2012) (internal quotation marks and citation omitted).

[50] *Hall v. Unum Life Ins. Co. of Am.*, 300 F.3d 1197, 1203 (10th Cir. 2002).

[51] *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1309 (10th Cir. 2007).

(1) is necessary to an ERISA claim (so long as it [does not pertain to] benefit eligibility . . . ), (2) could not have been submitted to the administrator while evaluating benefits, and (3) would aid in 'a fair and informed resolution of the claim.'[52]

But the Tenth Circuit has also "cautioned against too broad of a reading of [Circuit] precedent regarding supplementation of an ERISA administrative record,"[53] as there may be any number of situations where supplementation is appropriate.[54]

Nevertheless, the court concludes L.E. has not met her burden here. At the outset, her request is untimely. She presents the extra-record evidence nearly two years after the administrative record was finalized with no explanation for its omission except, perhaps, that "initial responsibility for the briefing was delegated to an associate who is no longer with [Schaap's] law firm, and both he and [] Schaap failed to communicate fully with [her] to gather all the relevant facts about her communications with DMBA."[55] Moreover, although L.E. contends the documents are "highly relevant" to the court's determination of whether she exhausted her administrative remedies, she falls short of establishing necessity. For reasons that will be discussed, the court concludes that any failure by L.E. to exhaust her administrative remedies was excused by DMBA's unresponsiveness. And while L.E.'s proffered evidence would add further context to that

---

[52] *H.R. v. United Healthcare Ins. Co.*, No. 2:21-cv-00386-RJS-DBP, 2022 U.S. Dist. LEXIS 184379, at *7 (D. Utah Oct. 6, 2022) (quoting *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163–64 (10th Cir. 2010)); *see also id.* at *7 n.25 (explaining that the standard for supplementing the administrative record depends on the relevant standard of review for the ERISA claim, however, certain requirements, such as "a showing of necessity," must always be satisfied).

[53] *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1129 (10th Cir. 2011); *see also Murphy*, 619 F.3d at 1160 ("Although we have frequently used broad language to describe our restriction on extra-record discovery and supplementation, the breadth of that language can be misleading, at least to some degree.").

[54] *See Hall*, 300 F.3d at 1203 (listing a variety of circumstances that "could warrant the admission of additional evidence" in ERISA cases, and noting "[t]his list is not exhaustive").

[55] Dkt. 55 at 1–2.

determination, it does not change the court's decision concerning the exhaustion of administrative remedies.[56]

Given L.E.'s failure to meet her burden, her Motion to Supplement the Administrative Record is DENIED.

## II.    Exhaustion of Administrative Remedies

Having declined to expand the administrative record, the court next considers DMBA's cornerstone defense—that L.E. failed to properly exhaust the two levels of administrative appeals contemplated by the Plan, and therefore her claims should be dismissed.[57]

### A.  L.E. Failed to Exhaust Her Administrative Remedies

"Although ERISA contains no explicit exhaustion requirement, courts have uniformly required that participants exhaust internal claim review procedures provided by the plan before bringing a civil action."[58]  This judicially-created doctrine derives from "the exhaustion doctrine permeating all judicial review of administrative agency action" and "is necessary to keep from turning every ERISA action, literally, into a federal case."[59]  "[F]ailure to file a timely

---

[56] The administrative record shows L.E. submitted the PHI form after receiving the May 19, 2020 letter from DMBA describing the requirements for designating an authorized representative.  *See* Dkt. 37 at 5 (citing *AR* at 33).  At this point, DMBA could either (1) ignore the submission, (2) deny the submission, or (3) process L.E.'s appeal.  Because the record does not contain any documentation showing DMBA either denied the submission or processed the appeal, the court is left with the assumption that DMBA effectively ignored L.E.'s appeal and corresponding PHI form for the span of several months.  By contrast, L.E.'s proffered extra-record evidence shows the parties were still communicating about L.E.'s attempted designation as late as July 6, 2020.  *See* Dkt. 58 [SEALED].  At that point, DMBA purportedly requested birthdates for all attorneys that could work on her case, which L.E. did not provide. *Id.* at 5–6.  It appears there were no further communications until L.E. filed suit on September 1, 2020—leaving a gap of nearly two months with no follow-up from DMBA.  In both cases—the administrative record case and the extra-record case—DMBA was left with an appeal and documentation attempting to designate counsel as L.E.'s authorized representative, without providing a formal denial or starting the administrative review process.

[57] *See* Dkt. 35 at 10–14; *see also* Dkt. 38, *DMBA's Opposition to L.E.'s Motion for Summary Judgment* at 19–22 (opposing L.E.'s Motion based largely on exhaustion grounds).

[58] *Holmes v. Colo. Coal. for the Homeless Long Term Disability Plan*, 762 F.3d 1195, 1203 (10th Cir. 2014) (citing *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013)).

[59] *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999) (internal quotation marks and citation omitted).

administrative appeal from a denial of benefits is one means by which a claimant may fail to exhaust her administrative remedies."[60]

DMBA claims L.E. never properly designated counsel to act as her authorized representative, such that her first-level appeal was never properly submitted.[61] In relevant part, the Plan Documents allow either the participant, L.E., or a duly authorized representative to appeal a denial of benefits.[62] In the latter case, the Plan Documents explain:

> Who may file an appeal? You, or someone you name to act . . . as your authorized representative, may file an appeal. Contact DMBA's appeals coordinator . . . for information about how to authorize another person to represent you.[63]

While the Plan Documents do not provide the exact procedures for designating an authorized representative, DMBA points out that its May 19, 2020 letter clearly directed L.E. to submit a signed and notarized statement designating counsel as her authorized representative, along with some additional information.[64] DMBA also notified L.E.'s counsel of this requirement and offered to answer any questions regarding the process for designating an authorized representative.[65] Yet, L.E. never submitted the exact document described in DMBA's May 19, 2020 letter.[66] Instead, she filed suit four months after providing a deficient PHI form.[67] Because L.E.'s administrative appeal was not properly

---

[60] *IHC Health Servs., Inc. v. FCH1 LLC*, No. 2:11-cv-00657-DBP, 2012 U.S. Dist. LEXIS 168930, at *7 (D. Utah Nov. 27, 2012) (quoting *Edwards v. Briggs & Stratton*, 639 F.3d 355, 362 (7th Cir.2011)).

[61] Dkt. 35 at 10–13.

[62] *See AR* at 213, 271, 274, 1232.

[63] *Id.* at 213, 271; *see also id.* at 274 ("Who may file an appeal? The patient, patient's parent (if the patient is younger than 18), legal guardian, or someone the patient has named to act as an authorized representative may file an appeal. Call DMBA . . . for information on how to authorize another person to represent you.").

[64] *Id.* at 27.

[65] *See id.* at 27–28; *see also* Dkt. 35 at 6–7.

[66] *See* Dkt. 35 at 7; Dkt. 36 at 11–12.

[67] *See* Dkt. 37 at 5 (citing *AR* at 33); *see also* Dkt. 50, *DMBA's Reply in Support of Its Motion for Summary Judgment* at 4–5 (discussing the deficiencies with L.E.'s proffered PHI form).

requested, DMBA maintains she did not exhaust her administrative remedies before the appeals window elapsed, and therefore her claims should be dismissed with prejudice.[68]

This court recently granted summary judgment for ERISA Defendants under what first appear to be similar circumstances.  In *C.L. ex rel H.L. v. Newmont United States Ltd.*, IHC Health Services sought to appeal an adverse benefit determination on behalf of an underage patient, H.L., with a third-party claims administrator.[69]  The claims administrator responded that it would "need a member authorization on file . . . to consider [IHC's] appeal."[70]  However, IHC did not provide the authorization form for nearly five months, by which time H.L.'s 180-day appeal window had elapsed.[71]  Under these circumstances, the court found that IHC's pre-authorization appeal request "did not constitute a timely appeal under the terms of the Plan," and therefore the plaintiff had "failed to exhaust her administrative remedies."[72]  Accordingly, the court granted the Defendants' request for summary judgment on the plaintiff's ERISA claims.[73]

In the instant matter, L.E. counters that DMBA's procedures for designating an authorized representative exceed the Plan Documents' requirements, and that the PHI form she submitted on May 27, 2020 was sufficient for the purpose of initiating an administrative appeal.[74]  However, it is well-established in the Tenth Circuit that a term or procedure "not contained in the plan, which does not conflict with the plan, is

---

[68] *See Dkt. 35* at 11–14.

[69] No. 2:18-cv-00192-RJS, 2020 U.S. Dist. LEXIS 109827, at *3–4 (D. Utah June 22, 2020).

[70] *Id.* at *4–5.

[71] *Id.*

[72] *Id.* at *9–10.

[73] *Id.* at *13–14.

[74] *See* Dkt. 37 at 4–5, 9–12.

enforceable where it is 'authorized by, or reflected in' the plan."[75]  Here, the Plan allows
"a duly authorized representative" of the participant to file a claim on the participant's
behalf.[76]  While the Plan does not define "duly authorized," the summary plan
description clearly contemplates additional procedures for designating an authorized
representative.  It directs participants to contact a specific DMBA telephone number "for
information about how to authorize another person to represent [them]."[77]  While L.E.'s
later filings allege DMBA's procedural requirements devolved from banal to more
absurd,[78] the administrative record shows that DMBA's requirements for designating an
authorized representative were generally measured and reasonable.  Indeed, it is
understandable for DMBA to adopt thorough, even rigorous, procedural requirements to
mitigate unauthorized access to participants' medical claims.[79]

  Under these circumstances, the court concludes L.E. was required to submit the written
statement contemplated by DMBA's May 19, 2020 letter to properly designate her counsel as an
authorized representative, and thereby appeal DMBA's denial of her benefits.  Because she
failed to do so, the court agrees with DMBA's contention that she did not exhaust her
administrative remedies as required under the Plan.

---

[75] *Holmes*, 762 F.3d at 1201 (quoting *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1131 (10th Cir. 2011)).

[76] *See AR* at 1232; *see also id.* at 213, 271, 274.

[77] *Id.* at 213, 271.

[78] Specifically, L.E. recounts numerous exchanges with DMBA over the sufficiency of her signature on the PHI form and DMBA's request that she list the birthdate for every person at Schaap's law firm that could potentially work on her case.  *See generally* Dkt. 55.  While ERISA regulations allow plan administrators to provide "reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant," 29 C.F.R. § 2560.503-1(b)(4), L.E.'s Declaration suggests some of DMBA's procedures may have exceeded the bounds of reasonableness.  *See* Dkt. 55.  However, because the court declines to consider L.E.'s extra-record evidence and she does not raise this argument in her briefing, the court does not consider it here.

[79] *Cf.* 29 C.F.R. § 2560.503-1(b)(4) ("[A] plan may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant . . . .").

### B.  *L.E.'s Failure to Exhaust Her Administrative Remedies Is Excused*

Yet, failure to exhaust administrative remedies does not automatically defeat a plaintiff's ERISA claim.  "Generally, a failure to exhaust will be excused in two limited circumstances— when resort to administrative remedies would be futile or when the remedy provided is inadequate."[80]  Additionally, ERISA's implementing regulations contain a third exception known as the "deemed exhaustion" exception, which deems claimants to have exhausted their administrative remedies "if a plan has failed to establish or follow claims procedures consistent with the requirements of ERISA."[81]  L.E. argues she falls under this exception because (1) she properly designated counsel as her authorized representative but DMBA never processed her appeal; and (2) DMBA did not comply with ERISA regulations.[82]  As noted above, the court disagrees with L.E.'s first contention,[83] but her second argument has some merit.

It has long been held that ERISA "calls for . . . a meaningful dialogue between ERISA plan administrators and their beneficiaries."[84]  To that end, ERISA regulations provide certain protections to ensure plan administrators' claim review procedures are both fulsome and timely.[85]  As relevant here, 29 C.F.R. § 2560.503-1 requires plans to provide claimants with written or electronic notification of any adverse benefit determination, reflecting, among other things, "[t]he specific reason or reasons for the adverse determination" and "[r]eference to the

---

[80] *Holmes*, 762 F.3d at 1204.

[81] *Id.* (citing 29 C.F.R. § 2560.503-1(l)).

[82] Dkt. 37 at 9–12.

[83] *See supra* Section II.A. (rejecting L.E.'s argument that her attempt to designate counsel as her authorized representative complied with the express terms of the Plan).

[84] *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003) ((quoting *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997)).

[85] *Cf. Scott M. v. Blue Cross & Blue Shield of Mass.*, 528 F. Supp. 3d 1200, 1215 (D. Utah 2021) ("Simply put, ERISA's procedural safeguards exist to require administrators to engage in a meaningful dialogue with claimants through a full and fair review.").

specific plan provisions" compelling the result.[86]  And subparagraph (b) mandates that "claims

procedures do not contain any provision, and are not administered in a way, that unduly inhibits

or hampers the initiation or processing of claims for benefits."[87]  Relatedly, "claim procedures

[must] not preclude an authorized representative of a claimant from acting on behalf of such

claimant in pursuing a benefit claim or appeal of an adverse benefit determination."[88]  When

these procedural safeguards are not afforded to claimants, ERISA regulations contemplate

application of the deemed exhaustion exception.[89]

But the exception does not apply every time a plan administrator falls short of ERISA

regulations.  Here, L.E. emphasizes DMBA's failure to articulate a "specific reason . . . for [its]

adverse determination" or "reference [] the specific plan provisions" that prompted denial of her

claim.[90]  However, the Tenth Circuit has refused to extend the deemed exhaustion exception to

such notice deficiencies "so long as the claimant [w]as not [] prejudiced thereby."[91]  To show

prejudice, the claimant must demonstrate "the notice and disclosure deficiencies actually denied

the participant a reasonable review procedure."[92]

Though L.E. places great weight on DMBA's notice deficiency, she has not demonstrated

that the notice denied her access to a reasonable review procedure.  The cursory statement of

non-coverage might have required L.E. to seek administrative review given the lack of a specific

---

[86] 29 C.F.R. §§ 2560.503-1(g)(1)(i)–(ii).

[87] *Id.* § 2560.503-1(b)(3).

[88] *Id.* § 2560.503-1(b)(4).

[89] *See id.* § 2560.503-1(l) ("[I]n the case of the failure of a plan to establish or follow claims procedures consistent with this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.").

[90] *See* Dkt. 37 at 11–12 (quoting *Gilbertson*, 328 F.3d at 635).

[91] *Holmes*, 762 F.3d at 1211 (internal quotation marks and citation omitted).

[92] *Id.* at 1213.

reason for the denial or cross-reference to the Plan, but there is no indication this deficiency prevented her from seeking review through DMBA's appeal procedures. "Simply put, [L.E.] has not shown she suffered any prejudice—as defined in the context of the deemed exhaustion exception—from [DMBA's] noncompliance with ERISA's notice requirements."[93]

While DMBA's deficient notice does not provide adequate grounds to extend the deemed exhaustion exception,[94] the court discerns another possible violation by DMBA: administering "claims procedures . . . in a way[] that unduly inhibits or hampers the initiation or processing of claims."[95]  In effect, L.E. argues that she promptly appealed her adverse benefit determination on or about May 8, 2020, by way of her counsel's letter.[96]  Then, after she received DMBA's letter directing her to designate counsel as an authorized representative, she submitted further documentation.[97]  After some back-and-forth between L.E. and DMBA,[98] there were no communications from DMBA regarding her attempted appeal for the span of several months. Indeed, the administrative record contains no documentation of DMBA expressly denying L.E.'s proffered form, following up on the status of her appeal, or otherwise providing the "meaningful

---

[93] *C.L.*, 2020 U.S. Dist. LEXIS 109827, at *13 (declining to extend the deemed exhaustion exception where the Defendants' only alleged violation of ERISA regulations was failing to comply with the notice requirements of 29 C.F.R. § 2560.503-1(g)).

[94] *See id.*

[95] 29 C.F.R. § 2560.503-1(3).

[96] Dkt. 37 at 4–5, 9–12.

[97] *Id.* at 5 (citing *AR* at 33).

[98] The exact communications between DMBA and L.E. regarding the PHI form are unclear.  Based on the administrative record and the parties' briefing, the court understands that DMBA directed L.E. to add a birthdate for Schaap's law firm, or speculated that "maybe [she] could decide on a date," which may or may not have prompted additional submissions from L.E.  *See AR* at 33; Dkt. 50 at 4 n.8 ("The PHI Form submitted in fact lacked required information, *e.g.*, birth date information, of which [L.E.] was aware because she was informed by DMBA.").  In any event, it is apparent that DMBA had an open line of communication with L.E., who was actively attempting to have DMBA's benefit denial appealed near the end of May 2020 or as late as July 6, 2020.  *Compare* Dkt. 51, *Plaintiff's Reply in Support of Her Motion for Summary Judgment* at 5–8 (describing L.E.'s attempts to have counsel designated as her authorized representative, with a focus on the submission of the PHI form on May 27, 2020, with potential additional submissions thereafter), *with* Dkt. 58 [SEALED] (reflecting L.E.'s extra-record contention that she continued to attempt to initiate her appeal as late as July 6, 2020).

dialogue" required by ERISA regulations.[99]  Instead, DMBA effectively sent L.E.'s request to

bureaucratic purgatory.  After several months, L.E. became frustrated and filed suit.[100]

ERISA regulations allow plans to "establish reasonable procedures for determining

whether an individual has been authorized to act on behalf of a claimant,"[101] but that discretion

does not except plan administrations from other regulatory obligations.  As prefaced, plans are

barred from "contain[ing] any provision, [or being] administered in a way, that unduly inhibits or

hampers the initiation or processing of claims for benefits."[102]  And they must also refrain from

"preclud[ing] an authorized representative of a claimant from acting on behalf of such claimant

in pursuing a benefit claim or appeal of an adverse benefit determination." [103] Here, DMBA's

approach to L.E.'s claim ran afoul of both mandates.  In response to a seven-page appeal from

L.E.'s counsel,[104] DMBA advised L.E.'s counsel of the required procedures for designating an

authorized representative—nothing too out of the ordinary.[105]  DMBA was then able to directly

contact L.E., who submitted a form giving her counsel broad access to her medical records—

providing further evidence of her endorsement of the May 8, 2020 appeal.[106]  Shortly thereafter,

---

[99] *Cf. Scott M.*, 528 F. Supp. 3d at 1212 ("ERISA's procedural regulations require the claims administrator, . . . during the appeals process, to engage in a 'full and fair review' that represents 'a meaningful dialogue between ERISA plan administrators and their beneficiaries.'" (quoting *Gilbertson*, 328 F.3d at 635)).

[100] *See* Dkt. 51 at 5–8 (discussing L.E.'s growing frustration with the process for designating counsel as her authorized representative and decision to file suit).

[101] 29 C.F.R. § 2560.503-1(b)(4).

[102] *Id.* § 2560.503-1(b)(3).

[103] *Id.* § 2560.503-1(b)(4).

[104] *See AR* at 19–25, 466–72.

[105] *Id.* at 27–28.

[106] *See* Dkt. 50 at 4 (describing DMBA's contacts with Schaap and L.E. regarding the PHI form); Dkt. 38 at 20–22 (same); *see also* Dkt. 51 at 5–7 (reflecting L.E.'s account of her communications with DMBA regarding her appeal and the PHI form).

DMBA followed up with some paperwork nits, and then appeared to take a summer-long hiatus from L.E.'s appeal.[107]

To be sure, L.E.'s actions were less than exemplary. Rather than provide the written designation clearly described in DMBA's May 19, 2020 letter, L.E. offered an unnotarized PHI form—at least at first.[108] Then, when confronted with DMBA's corrections, L.E. quibbled with its additional procedural requirements.[109] Nevertheless, DMBA was sent a thorough appeal by L.E.'s counsel,[110] which L.E. attempted to endorse by submitting her PHI form.[111] Despite the later corrections sent by DMBA,[112] L.E. could reasonably assume she had properly—or even excessively—confirmed that she was represented by counsel, and therefore her appeal would proceed.[113] DMBA had months to dispel that notion, or even proceed with the appeal, but failed to do either. Instead, having been fully apprised of the grounds for L.E.'s appeal, and the veracity of her representation, DMBA seemed content to let L.E.'s window for appeals close. These are not hallmarks of a transparent process or "meaningful dialogue" between a fiduciary and claimant. On the contrary, DMBA's lack of communication and inaction "unduly inhibit[ed]

---

[107] *See* Dkt. 51 at 5–7.

[108] *See AR* at 33.

[109] *See* Dkt. 37 at 10 (reflecting L.E.'s position that she substantively complied with the terms of the Plan and did not need to follow DMBA's additional procedures); *see also* Dkt. 58 [SEALED] (describing L.E.'s terse exchanges with DMBA regarding the validity of her signature and the completeness of the PHI form).

[110] *See AR* at 19–25, 466–72.

[111] *See* Dkt. 37 at 10; Dkt. 51 at 5 ("Plaintiff submitted the [PHI] authorization form in direct response to her previously filed appeal.").

[112] *See AR* at 33.

[113] *Cf.* Dkt. 51 at 5–7 (reflecting L.E.'s understanding that she had gone above and beyond the requirements for designating an authorized representative and thereby commencing her appeal).

or hamper[ed] the initiation or processing of [L.E.'s] claim"[114] and "actually denied [her] a reasonable review procedure."[115]

Indeed, one could envision an analogous situation where a claimant requests an administrative appeal, but the submission suffers from some *procedural* defect, such as a missing signature or birthdate, or even use of an outdated form.  After receiving notice of the defect, the claimant submits additional documents to comply with the plan administrator's procedures, with some additional nits from the plan administrator.  But rather than alert the claimant of her continued noncompliance, the plan administrator simply allows the clock to run on the claimant's appeal window.  This hypothetical, and, of course, L.E.'s situation, run counter to the regulations' demand for a "meaningful dialogue,"[116] as well as the recognition that "ERISA . . . regulations are intended to make it easy for people . . . to seek and obtain what they are entitled to without obsessive attention to administrative pleading requirements."[117]

Despite some facial similarities, L.E.'s situation also meaningfully deviates from the facts of *C.L.*  There, the third-party claims administrator directed IHC that "they need[ed] a member authorization on file . . . to consider the [claimant's] appeal."[118]  Yet, IHC failed to provide the authorization for the span of several months, during which time C.L.'s appeal window elapsed.[119]  Here, by contrast, L.E. promptly tried to get her appeal processed for nearly a full month, submitting at least one, though perhaps multiple, documents demonstrating her

---

[114] 29 C.F.R. § 2560.503-1(b)(3).

[115] *Holmes*, 762 F.3d at 1213.

[116] *See Gilbertson*, 328 F.3d at 635.

[117] *Vugrin v. Stancorp Fin. Grp., Inc.*, No. CIV 13-0972 KBM/KK, 2014 U.S. Dist. LEXIS 187095, at *19 (D.N.M. Nov. 4, 2014).

[118] *C.L.*, 2020 U.S. Dist. LEXIS 109827, at *4.

[119] *Id.* at *4–5.

representation by counsel.[120]  But rather than seriously engage with L.E.'s appeal, DMBA effectively disregarded her request given the paperwork deficiencies with L.E.'s PHI form. Critically, DMBA also refrained from advising L.E. of the consequences of her non-compliance or simply denying the submission, causing the appeal to linger far longer than should have been allowed.

In sum, the breakdown of processes that prevented L.E. from administratively appealing her denial of benefits claim cannot be reconciled with the clear thrust of ERISA regulations. DMBA's "failure to engage in a meaningful dialogue with [L.E.] violate[d] ERISA's claims processing and fiduciary duty standards."[121]  Because DMBA's failure also "denied [L.E.] a reasonable review procedure,"[122] the court concludes the deemed exhaustion exception applies to L.E.'s ERISA claims.

Importantly, this holding does not seek to contradict or undermine the full breadth of 29 C.F.R. § 2560.503-1(b)(4), which provides that, among other things, "a plan may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant."[123]  But this grant of discretion does not allow plan administrators to cast aside other regulatory obligations because of a claimant's failure to achieve procedural perfection.  In the context of an obvious request for an appeal and a claimant's earnest attempts to designate an authorized representative, ERISA regulations do not require plan administrators to abandon their reasonable procedures, but they must continue to engage with the claimant or

---

[120] *See* Dkt. 37 at 10; Dkt. 51 at 5; *see also* Dkt. 58 [SEALED].

[121] *James F. ex rel. C.F. v. Cigna Behavioral Health, Inc.*, No. 1:09CV70 DAK, 2010 U.S. Dist. LEXIS 136134, at *23 (D. Utah Dec. 23, 2010).

[122] *See Holmes*, 762 F.3d at 1213.

[123] 29 C.F.R. § 2560.503-1(b)(4).

clearly communicate the grounds for refusing to start the appeal.[124]  DMBA's exhaustion defense

fails because it did neither.

## III.    ERISA Preemption of L.E.'s Common Law Claim

While the clear balance of the parties' briefing is devoted to DMBA's exhaustion

defense, DMBA also offers a blunt challenge to L.E.'s remaining common law claim.  Because

L.E.'s "action is governed by ERISA," DMBA contends "her common law claim for breach of

good faith and fair dealing is preempted pursuant to 29 U.S.C. § 1144(a), and should be

dismissed as a matter of law."[125]  L.E. does not respond to DMBA's preemption argument.[126]

ERISA contains a sweeping preemption provision, providing that it "supersede[s] any

and all State laws insofar as they may now or hereafter relate to any employee benefit plan

[covered by ERISA]."[127]  The term "state law" includes all "laws, decisions, rules, regulations,

or other State action having the effect of law."[128]  A state law "relates to" an employee benefit

plan "if it has a connection with or reference to such a plan."[129]  "State common law causes of

action that are preempted include claims for breach of contract, breach of the covenant of good

faith and fair dealing, breach of fiduciary duty, fraud, and intentional infliction of emotional

distress."[130]

---

[124] *See id.* §§ 2560.503-1(b)(3), (h).

[125] Dkt. 35 at 14.

[126] *See generally* Dkt. 37.

[127] 29 U.S.C. § 1144(a); *see also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) ("[ERISA's] deliberately expansive language was designed to establish pension plan regulation as exclusively a federal concern." (internal quotation marks and citation omitted)).

[128] 29 U.S.C. § 1144(c)(1).

[129] *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983).

[130] *Hymes-Odorizzi v. Reassure Am. Life Ins. Co.*, No. 00-940 RLP/LFG, 2001 U.S. Dist. LEXIS 28007, at *6 (D.N.M. Feb. 13, 2001) (citing *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504 (9th Cir. 1985)); *see also Kelso v. Gen. Am. Life Ins. Co.*, 967 F.2d 388, 390 (10th Cir. 1992) ("Preemption applies to common law contract and tort claims if the factual basis of the cause of action involves an employee benefit plan.").

Based on the administrative record, the court determines that L.E.'s only interactions with DMBA were "in connection with" the Plan, and that the entire factual basis for L.E.'s common law claim against DMBA involves the Plan and her treatment by the plan administrator.[131]  Accordingly, the court concludes that L.E.'s claim for breach of the covenant of good faith and fair dealing is preempted by § 1144(a).

## IV.   Remedies

### A.  Remand

Having found that L.E.'s failure to exhaust DMBA's administrative processes is excused under the deemed exhaustion exception, the court must now determine how to best proceed.  As noted above, DMBA calls for the dismissal of L.E.'s lawsuit as a matter of law,[132] whereas L.E. urges the court to review the administrative record de novo and reverse DMBA's denial of her benefits.[133]  However, under the present circumstances, the court concludes remand is needed before adjudging the merits of L.E.'s remaining claims.

In most ERISA cases, after addressing any affirmative defenses, the court will review the challenged benefits determination under one of two standards: arbitrary and capricious review (when the administrator is vested with discretion to review claims and properly exercises that discretion) or de novo review (when either the administrator is not afforded discretion or fails to

---

[131] *Cf. Classic Air Care, LLC v. Aetna Life Ins. Co.*, No. 2:20-cv-00506-TC, 2021 U.S. Dist. LEXIS 11366, at *19-20 (D. Utah Jan. 19, 2021) (dismissing a plaintiff's claims for, among other things, breach of contract and breach of the covenant of good faith and fair dealing where the plaintiff's "only interactions" with the claims administrator were "in connection with the Plan" (internal quotation marks and citation omitted)).

[132] Dkt. 35 at 1.

[133] Dkt. 36 at 15–17, 23–25.

properly exercise its discretion through serious procedural irregularities or otherwise).[134]  But "there are also cases that do not fit into either category."[135]

When "the administrative process is interrupted midstream due to unintentional procedural irregularities rather than the parties' conduct, leaving an incomplete and inconclusive administrative record," courts have recognized that "remand is the best option to allow for a benefits determination on the merits and to create a complete record for judicial review."[136] Courts have also noted that "[r]emand is the appropriate remedy when the administrator 'failed to make adequate factual findings or failed to adequately explain the grounds for the decision.'"[137]  In these cases, remand better serves ERISA policies by promoting "an ongoing, good faith exchange of information between the administrator and the claimant."[138]

Though neither party requests remand here, the facts clearly support such an outcome. First, this is a case where the administrative process was upended by the parties' inability to navigate a single procedural irregularity—L.E.'s submission of a PHI form rather than DMBA's requested authorization.  While this procedural irregularity was not necessarily "unintentional," it was the result of mutual shortcomings—specifically, L.E.'s failure to submit the correct authorization form and DMBA's abrogation of its duties when confronted with a routine procedural deficiency.[139]  Second, the administrative record is incomplete, which leaves the

---

[134] *M.Z. v. Blue Cross Blue Shield*, No. 1:20-cv-00184-RJS-CMR, 2023 U.S. Dist. LEXIS 52259, at *44 (D. Utah Mar. 24, 2023) (citing *LaAsmar*, 605 F.3d at 797; *Gilbertson*, 328 F.3d at 635).

[135] *Id.*

[136] *Id.* at *44–45 (citing *Messick v. McKesson Corp.*, 640 F. App'x 796 (10th Cir. 2016) (unpublished)).

[137] *Scott M.*, 528 F. Supp. 3d at 1220 (quoting *Spradley v. Owens-Ill. Hourly Emp. Welfare Benefit Plan*, 686 F.3d 1135, 1142 (10th Cir. 2012)).

[138] *See Messick*, 650 F. App'x at 798 (quoting *Gilbertson*, 328 F.3d at 635).

[139] *See supra* Section II.B.

court in a "poor position to evaluate" L.E.'s claim.[140]  As L.E. points out, her claims were denied with conclusory statements of non-coverage—a far cry from the specific reasoning and cross-references to the Plan required under ERISA regulations.[141]  Given L.E.'s stalled appeal, DMBA has neither revisited L.E.'s claims nor articulated a specific reason for the denial.  Under these circumstances, the court is poorly equipped to analyze the reasonableness of DMBA's benefits determination without affording the parties a second chance at the administrative process.[142]

Recognizing that ordinarily "[r]emand is the appropriate remedy when the administrator 'fail[s] . . . to adequately explain the grounds for [denial],'"[143] the court will remand this case for DMBA to provide a full and fair evaluation of L.E.'s claims.  Given the substantial time that has passed since L.E.'s attempted appeal, she will have thirty (30) days to file a renewed appeal with DMBA.[144]

### B.  L.E.'s Breach of Fiduciary Duties Claim

In light of the remand of L.E.'s denial of benefits claim, the court concludes that her remaining claim—brought under 29 U.S.C. §§ 1132(a)(2) and (a)(3)[145]—is not yet ripe for review.[146]  In relevant part, § 1132(a)(2) allows participants to bring a civil action to seek relief

---

[140] *See Messick*, 650 F. App'x at 798–99.

[141] *See* Dkt. 36 at 15 (citing 29 C.F.R. § 2560.503-1(g)(1)).

[142] *See Messick*, 650 F. App'x at 798–99 (stating that Tenth Circuit "case law has long recognized the importance of completing the administrative review process before filing suit," and that the "appropriate remedy" for "a procedural irregularity and [] resulting incomplete remedy" is a remand to the plan administrator).

[143] *Scott M.*, 528 F. Supp. 3d at 1220 (internal quotation marks and citation omitted).

[144] *See id.* at 1221 (following a similar remand procedure).

[145] *See* Dkt. 30 ¶¶ 41–46.

[146] *See Keyes v. School Dist. No. 1*, 119 F.3d 1437, 1444 (10th Cir. 1997) ("As a jurisdictional prerequisite, ripeness may be examined . . . *sua sponte*."); *see also United States v. Wilson*, 244 F.3d 1208, 1213 (10th Cir. 2001) ("In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in clean-cut and concrete form." (internal quotation marks and citations omitted)).

on behalf of a plan for breaches of fiduciary duties under § 1109,[147] while § 1132(a)(3) provides a sort of "catchall" safety net, "offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy."[148]  Because the outcome of L.E.'s denial of benefits claim has a direct bearing on whether L.E.'s second cause of action stands—for example, whether she has a basis for damages to the plan or adequate grounds for equitable relief—it is hereby dismissed without prejudice to L.E.'s right to reassert it following completion of the remand proceedings.[149]

### C.  Prejudgment Interest

"Under the circumstances of this case, and in light of the hardship that has been imposed on [her]," L.E. urges the court to grant a full award of prejudgment interest.[150]  In an ERISA matter, "prejudgment interest is available in the [c]ourt's discretion,"[151] when it "serves to compensate the injured party and its award is otherwise equitable."[152]  However, "[b]ecause the

---

[147] *See Hurley v. Dyno Nobel, Inc.*, No. 2:08-cv-00415-RJS, 2014 U.S. Dist. LEXIS 126907, at *22–24 (D. Utah Sep. 8, 2014) (discussing the limitations of claims brought pursuant to § 1132(a)(2)).

[148] *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

[149] *Cf. Schwob v. Standard Ins. Co.*, 37 F. App'x 465, 470–71 (10th Cir. 2002) (unpublished) (concluding that a district court should have dismissed an ERISA claim for ripeness where, among other considerations, "postponing judicial review would not have caused hardship to plaintiff; any judicial intervention would have inappropriately interfered with the continuing administrative process; and [] the district court . . . would have benefited from further factual development of the relevant [] issues").  Apart from the court's jurisdictional concerns, DMBA questions whether these claims are even consistent with the remedy L.E. seeks.  *See* Dkt. 35 at 3–4 (discussing possible deficiencies with L.E.'s claims).  However, because DMBA does not move for summary judgment on these grounds, the court does not address DMBA's speculations.

[150] Dkt. 36 at 23–24.

[151] *Campbell v. Ball Corp. Consol. Welfare Benefit Plan*, No. 13-cv-00132-MSK-KMT, 2015 U.S. Dist. LEXIS 122845, at *8 (D. Colo. Sep. 15, 2015) (citing *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008)).

[152] *Allison v. Bank One-Denver*, 289 F.3d 1223, 1243 (10th Cir. 2002).

court remands this matter to [DMBA] rather than award benefits, prejudgment interest is not warranted."[153]

### D. Attorneys' Fees

In addition to requesting prejudgment interest, L.E. moves for an award of attorneys' fees.[154]  Under 29 U.S.C. § 1132(g)(1), a court "in its discretion may allow a reasonable attorney's fee"[155] when a "claimant has achieved 'some degree of success on the merits.'"[156] The Tenth Circuit has articulated the following factors to guide the court's discretion:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.[157]

These factors are flexible.  "No single factor is dispositive and a court need not consider every factor in every case."[158]

Having considered these factors, the court declines to exercise its discretion to award fees to L.E.  First, although the record shows DMBA's conduct fell short of the "meaningful dialogue" required under ERISA regulation, the record does not show that its actions were taken in bad faith or that it otherwise acted culpably.  More dispositive is the fact that L.E. has not achieved much success on the merits.  Rather, she has narrowly survived DMBA's Motion for

---

[153] *James C. v. Aetna Health & Life Ins. Co.*, 499 F. Supp. 3d 1105, 1124 (D. Utah 2020) (declining to award prejudgment interest where the court remanded the denial of benefits claim to a claims administrator for administrative review); *see also Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1179 (D. Utah 2019) ("[T]he court has not awarded damages and so the court will not award prejudgment interest.").

[154] *See* Dkt. 36 at 24.

[155] 29 U.S.C. § 1132(g)(1).

[156] *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010)).

[157] *Id.*

[158] *Id.*

Summary Judgment—prompted largely by her own failure to diligently exhaust DMBA's administrative remedies.[159]  The court's decision simply remands L.E.'s benefits claim to DMBA for a "full and fair review," as the parties should have facilitated more than three years ago.  Accordingly, L.E.'s request for reasonable attorneys' fees is DENIED.

---

[159] *See supra* Section II.A.

## CONCLUSION

For the reasons stated above, DMBA's Motion for Summary Judgment[160] is GRANTED in part and DENIED in part, L.E.'s Motion to Supplement the Administrative Record[161] is DENIED, and L.E.'s Motion for Summary Judgment[162] is DENIED in part and REMANDED in part, as follows:

1. L.E.'s Motion to Supplement the Administrative Record is DENIED.[163]

2. L.E.'s claim for breach of the covenant of good faith and fair dealing[164] is DISMISSED as a matter of law.

3. L.E.'s claim for breach of fiduciary duties[165] is DISMISSED without prejudice.

4. L.E.'s benefits denial claim[166] is REMANDED to DMBA for a full and fair review consistent with the Plan and ERISA regulations.

5. L.E.'s requests for prejudgment interest and attorneys' fees are DENIED.

The Clerk of Court is directed to close the case.

SO ORDERED this 20th day of June, 2023.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[160] Dkt. 35.

[161] Dkt. 55.

[162] Dkt. 36.

[163] Dkt. 55.

[164] *See* Dkt. 30 ¶¶ 47–60.

[165] *See id.* ¶¶ 41–46.

[166] *See id.* ¶¶ 29–40.

28